Under these circumstances it was contended that the grant to Thomas King was void, another grant having before issued upon the same warrant; and consequently the claim of Miller was void, he being in no better situation than King himself.
SCOTT, for the defendant, read a certified copy of the grant to Thomas King, from which it appeared that the survey was different from that read by the counsel for the plaintiff.
This copy accorded with the grant as altered.[1]
CAMPBELL and WHITESIDE, for the lessor of the plaintiff. — The objection taken to our title on account of several grants having been obtained upon warrants of the same number cannot prevail; for admitting it to be an evidence of fraud in King, which does not appear, yet Miller is not charged with having notice of this fraud, and consequently must be considered as an innocent purchaser, and not to be affected; the imputation of fraud has always been considered as a personal consideration.
It is true the grant to Thomas King as read by us differs from the copy produced by the defendant's counsel, which can be accounted for to the satisfaction of the Court.
Upon a motion for a new trial in this case it was determined that the grant as altered could not be read, because notice did not appear to have been given to the defendant or any person then holding the title under which the defendant claims; it was then conceived necessary under the Act of Assembly. *Page 115 
Not being permitted to read the grant as altered, we have offered it as it originally stood. It certainly ought to go to the jury, for it would seem unusually hard, more so than would accord with the principles of justice, that we should neither read the grant as altered nor as it originally stood.
If perchance the man has innocently omitted a step necessary to be observed in the amendment, it would be beyond the utmost rigor of justice to say that his grant should be destroyed altogether.
Gen. White, having been introduced as a witness, proved that King, informed him that he intended to run the land differently from what was expressed in the original grant; and that he did not know but it had been run in that manner.
The evidence of General White clearly proved that there was a mistake in the surveyor, for the plat does not appear to be in the form which was described in the evidence. The jury, in the decision they are now about to make, are competent to the rectification of this mistake agreeably to the case of Person against Roundtree, mentioned in Haywood's Reports, 378. In one of these cases it appeared that the survey as run lay entirely on the opposite side of the creek from the courses mentioned in the plat. If a mistake in that case, where the lines in the plat did not include a foot of the land surveyed, could be rectified in the consideration of the court of justice, this may, where the mistake is not so gross. It certainly was a mistake in the surveyor, for a tree marked as a corner in the line of a tract which it was intended to adjoin is to be found as it is stated in the testimony, yet the courses do not go there. There being such a tree marked is strong evidence that it was intended as the corner. Before the subject is dismissed it may be necessary to recur to some of the arguments used on the other side respecting the alteration of the grant.
The common law is resorted to as governing this case. If a deed be altered in any part either material or immaterial, by the party interested in it, its obligation is annulled. This reasoning cannot apply to the principal case, for we have produced an order of the County Court, showing the ground of the *Page 116 
alteration by the secretary of North Carolina; it was not done by the party himself with a fraudulent intent, but by an officer of government. This appeared to be the substance of the arguments and evidence on both sides.
[1] Vide ante, p. 40.7
The first question to be determined is whether the grant as it originally stood before amendment, should be read.
The English authorities which have been referred to are surely founded in reason; there is however no doubt but that these authorities presuppose the idea of mala fides in the alteration by the party himself.
The common law has wisely determined not to look to what effect an alteration by the person interested might have on the meaning of a contract. To preserve the inviolabilty of written contracts, it will not permit the impious touch of fraud without destruction. By no possible means can this reasoning apply to the case before the Court. The grant as altered could not be read, so as to affect the defendant, because he nor any person whose right he claimed had notice so as to contest the proposed alteration. It cannot be supposed that the lessor of the plaintiff had any intention of making an alteration in his grant otherwise than as the laws of his country authorized; for this purpose he applied to the County Court, who decided that the alteration should be made, and certified the same to the secretary of North Carolina, in consequence of which it was done. If the lessor of the plaintiff omitted to give notice, for want of which it could not be read against the defendant or any other individual having title at the time of the alteration, it would be too much to say that the right should be destroyed altogether.
The reasoning of the common law does not apply to this case, though the letter may, but, qui hœret in litera, hœret in cortice.
The next inquiry will be, what effect this grant shall have; it is admitted that it does not cover the land in dispute.
The cases in Haywood appear correct; but whether they will apply to this case the jury must determine; it is however proper to remark, that the authority *Page 117 
in Haywood shows that the party had been in possession of the land as surveyed, which it would seem operated as notice to subsequent enterers.
In the case before the Court, the jury will consider whether the original claimant of the 5000 acre tract had any notice of King's claim to the land in dispute. It appears from the grant of the 5000 acres that no notice at all was taken of the claim of 640 acres of Thomas King.
The jury are certainly competent to rectify the mistake should they conceive it one, but not so as to affect subsequent claimants, having no other notice of the manner in which the land was run, than what the register's books would afford; the grant for the 640 acre tract as it stands registered appears complete; all the lines closing. The case of a clerical mistake might admit of a different consideration, there the face of the grant would show a mistake, — as for instance if, in calling for the closing line, a contrary course from the one which would close the survey is expressed in the grant.
It has been objected that the plaintiff cannot prevail, on account of fraud, in procuring the original grant to Thomas King.
No evidence has been offered to show that the mere circumstance of the three surveys made in the name of Baily, King, and Walling, calling for a warrant of the same number, is sufficient proof of fraud in obtaining the grant from North Carolina; whether the Court have the power of inquiring into the manner in which the grant has been obtained it is not now necessary to determine. Whether Thomas King imposed upon or defrauded the State in obtaining his grant is not material with the lessor of the plaintiff, unless he had notice of that fraud. If he had not, he was an innocent purchaser, and ought not to be affected.[1]
 Verdict for the defendant.
[1] See 2 Ver. 599, 751; Amb. 313; 2 Fonb. 307, 8, 9; 1 Johns. 537; Newl. Cont. 510, 511; Sug. 650; 2 Eq. Ca. 244; Cowp. 278; 2 Com. Dig. 718; 3 Atk. 407.